## PRESTON *vs.* DAYSSON ET ALS.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

According to the act of the legislature, passed the 13th March, 1827, *concerning protests of bills and notes,* whenever the notary certifies, that, after diligent inquiry for the residence of the party intended to be *charged by notice,* he is unable to find it, and has lodged the notice in the nearest post-office, addressed to him at the place where the contract was made, it is deemed equivalent to personal notice.

Of the fact stated in the notary's certificate, that due diligence was used by him, to find the residence of the party, but in vain, and of the notice being deposited in the post-office, the certificate itself, must be taken as *primâ facie* evidence.

The nature and degree of the diligence used by the notary, to find the residence of the party, on whom notice is to be served, may be inquired into, and if in point of fact, he did not use *due diligence* to obtain the necessary information, then the presumption arising from his official certificate will yield to contrary proof.

The statute passed by the legislature, does not change the usage or rule of the commercial law, in relation to the diligence to be used, in serving notices of protest, but merely provides a new mode of proof of such diligence.

When the statute speaks of *due* diligence, without defining in what it shall consist, it refers necessarily to the existing rule, according to commercial law or usage.

If the holder of a bill uses reasonable diligence to discover the residence of the endorser, notice given as soon as this is discovered, is *due notice* of the dishonor of the bill, within the usage and custom of merchants.

The holder of a bill or note ought not to avail himself of the ignorance of the notary, as to the residence of the endorsers.

The plaintiff alleges that one Lasalle, on the 23d of July, 1832, executed his note for three hundred and thirty dollars ninety-four cents, payable four months after date, to the order of one Plotz, who endorsed it to Madame veuve Daysson, who endorsed it to the petitioner. That said note

was presented for payment, protested, and due notice thereof given to the endorsers, who have all become liable for the payment thereof. He prays judgment accordingly.

Madame Daysson alone made a defence. She admitted her endorsement on the note, pleaded the general issue, and denied specially, having ever received notice of protest.

The note and protest were given in evidence. The protest bears date the 26th November, 1833, and the certificate of the notary, also in evidence, states that he notified the defendant (veuve Daysson) of the protest by *letter* addressed to her, dated on the day of said protest, and served on her this day, by depositing the same in the post-office in this city, directed to her, *not having been able to find her, after due and diligent inquiry.*

Parole evidence was given to rebut the presumption in the notary's certificate of due diligence being used, without effect, to find the defendant's residence. The notary did not make the inquiry himself. One of his clerks was sent with the notice. He swears he called at the store of the drawer and the payee and endorser of the note, but could not obtain information of the residence of Madame Daysson, to deliver the notice. On reporting this fact to the notary, he was directed to deposit the notice in the city post-office, directed to her, in pursuance of the *act of* 1827, *p.* 76.

*D. Seghers*, witness for defendant, says that Mr. Tricou, who negotiated the note, and whose name was endorsed on it, was well acquainted with Madame Daysson's residence, and could easily have pointed it out to the notary. It is in evidence that defendant's husband kept a store, and this note was taken by her in payment of goods sold at private sale of her husband's succession. The note fell due the 26th November, 1833; notice was due to her next day. She was verbally informed on the 30th November of the protest, and received the written notice on the 2d December.

The district judge was of opinion that due diligence was not used to obtain the necessary information of the defendant's residence, and gave judgment in her favor. The plaintiff appealed.

*Preston, in propriâ personâ,* and for appellee. We have shown that due diligence was used to ascertain the place of defendant's residence, but in vain ; but being sued as endorser, she was duly notified of the dishonor of the note, through the post office. See *act of* 1827, 1 *Moreau, Digest, p.* 96.

2. Neither the plaintiff or defendant were merchants, and could suffer no damage by a delay of six days, in receiving notice of the dishonor of the note.

3. The defendant, in consequence of the death of her husband, had rented out the ground floor, and retired from business into the upper story of her house, where her residence was unknown. Her business was all in charge of an agent, and she not known (being a woman,) to any but her agent or lawyer.

4. Notice through the post-office should be liberally construed, in a large city where there is such a heterogeneous, and so dense a population as in New-Orleans, in which our next door neighbor is often a stranger to us ; while the love and pleasure of literary correspondence, lead us constantly to the post-office for every kind of intelligence.

*J. Seghers, contra,* contended, that the notice in this case is insufficient. The sufficiency of notice sent by mail, is well established, when the person to be charged, resides in a different town or place, from that in which the note was presented for payment. But when he resides in the same place, notice must be personal, or left at his residence or place of business ; depositing it in the post-office, is insufficient. *Bayley on Bills,* ed. 1826, *p.* 178, *note a.*

2. When the party resides in the place where payment is demanded, notice of the dishonor must be given to him, at farthest, on the day following that of protest or dishonor. To those who reside elsewhere, it must be sent by the post on that or the following post day. 11 *Martin,* 452. *Bayley on Bills,* 171.

3. When a party's residence is unknown, *due* diligence must in general, be used to find it out. Inquiry should be made of some of the *other parties to the note. Bayley,* 180, 181.

2

EASTERN DIST. *June*, 1834.

PRESTON
*vs.*
DAYSSON ET ALS.

4. In this case the notary did not use due diligence, nor did he make inquiry as he should have done.

5. The third section of the act of 1827, does not apply to parties residing in the same place where the demand and dishonor of the bill takes place. It provides that the notary shall use *all due* diligence to obtain the necessary information as to residence of the party to be notified, which, in this case, he has not done.

*Bullard, J.* delivered the opinion of the court.

This suit is brought by the holder of a promissory note, against the endorsers; and the plaintiff alleges a regular demand of the drawer, protest for non-payment, and due notice to the defendant as endorser. The defendant denies all the facts in the petition, except her signature, and she specially denies having received notice of protest.

In support of the allegation that the defendant had been duly notified of the demand, and non-payment, the plaintiff gave in evidence, a notarial protest, in the usual form, with a certificate of the notary public thereto annexed, stating the manner in which the notices had been given to the other parties to the note. After stating in what manner the other endorsers had been notified, the notary says, that the defendant was notified "by depositing the one (letter) for veuve Daysson in the post-office in this city, directed to her, not having been able to find her, after due and diligent inquiry."

The effect we are to give to this certificate, as evidence of notice, depends on the construction of the act of the legislature, of the 13th March, 1827, entitled "an act to amend an act concerning protests of bills of exchange, and promissory notes," &c.

The first section of this act, provides "that all notaries, or persons acting as such, are authorised in their protests of bills of exchange, promissory notes or orders, for the payment of money, to make mention of the demand made upon the drawer, acceptor, or person on whom such order or bill of exchange is drawn or given, and of the manner or circum-

EASTERN DIST.
June, 1834.

PRESTON
vs.
DAYSSON ET ALS.

stances of such demand, and his certificate added to such protest, to state the manner in which such notices of protest, to drawers, endorsers, or other persons interested were served or forwarded, and whenever they shall have so done, a certified copy of such certificate and protest, shall be evidence of all the matters therein contained." The third section provides, that "whenever the residence of any such drawer, acceptor, endorser or others, shall be unknown to the notaries or others acting as such, and whenever, after using all due diligence to obtain the necessary information thereon, the said residence shall not have been found by said notaries or others, acting as such, then, and in that case, it shall be the duty of such notary or others acting as such, to put the notices of such protest in the nearest post-office, where such protest was made, addressed to such drawer, acceptor, endorsers or others, at the place where it shall appear by the face thereof, such bill of exchange or promissory note was drawn, and the same shall be deemed and considered as legal notice of such protest."

Whatever we may think of the policy of this act, as an innovation on commercial usages, we are bound to give effect to it, according to its true construction. We think the legislature intended to declare, that whenever the notary certified that after diligent inquiry for the residence of the party intended to be charged by notice, he could not find it, a notice had been lodged in the nearest post-office, addressed to him, at the place where the contract was made, it should be deemed equivalent to personal notice. Of the fact that such diligence was used, and such notice was deposited in the post-office, the certificate of the notary must be taken as *primâ facie* evidence. The nature and degree of that diligence may be inquired into, and if it should appear that in point of fact, the notary did not use due diligence to obtain the necessary information, then the presumption arising from his official certificate, will yield to the contrary proof. The question, therefore is, whether the evidence offered by the parties, shows a want of diligence on the part of the notary to find the residence of the endorser.

According to the act of the legislature passed the 13th March, 1827, *concerning protests of bills and notes,* whenever the notary certifies that after diligent inquiry for the residence of the party intended to be *charged by notice,* he is unable to find it, and has lodged the notice in the nearest post-office, addressed to him at the place where the contract was made, it is deemed equivalent to personal notice. Of the fact stated in the notary's certificate, that due diligence was used by him to find the residence of the party but in vain, and of the notice being deposited in the post-office, the certificate itself must be taken as *primâ facie* evidence. The nature and degree of the diligence used by the notary to find the residence of the party on whom notice is to be served, may be inquired into, and if in point of fact he did not use *due diligence* to obtain the necessary information

EASTERN DIST.
June, 1834.

PRESTON
vs.
DAYSSON ET ALS.

then the presumption arising from his official certificate will yield to contrary proof.

The notary who was sworn as a witness, deposed, ⹂that he did not make the inquiries for the domicil of Madame Daysson himself, nor did he deposit the notice of protest in the post-office. That it was done by a clerk of his. That he is regular in sending all notices of protest to the post-office, when the persons to whom they are directed, cannot be found on the day after the protest is made.

The notary's clerk, F. B. Vinot, deposed, that he was employed to deliver the notices of protest to the different endorsers, and did so as stated in the certificate. That he made inquiry at the store of the drawer, and at that of the other endorsers, for the domicil of Madame Daysson, in order to deliver the notice of protest to her, but the persons in the house could not tell him where she lived. He reported this to Mr. Christy, who directed him to put the letter directed to Madame Daysson, into the post-office. On his cross examination, the witness stated, that he had no distinct recollection of putting this letter into the post-office, for Madame Daysson. Mr. Christy being re-examined, says, that he has a distinct recollection of ·giving the written notice of protest of the note sued on, along with others, to Vinot, in order to be put into the post-office.

On the other hand, S. Borel, the agent of the defendant, testified that the defendant resides in Royal-street, where she has lived for eighteen months; that she lived previously in Maine-street; that she does not now keep a store; her husband formerly kept a store, and died there; that she had hired out the room on the ground floor, and lives in the second story. He takes the defendant's letters out of the post-office for her; he took out the letter No. 1, on the 2d December; he had been at the office the day preceding inquiring for letters for the defendant, but there was none for her. He had no knowledge of her receiving any other notice, than that received on the 2d December.

The notice in the record, is dated November 26, 1833, and Vinot swears that it was put into the post-office on the same day. If that be true, it is of no importance at what period it reached defendant, provided due diligence had been used to

find out her residence, because the statute makes the putting of the letter into the office, constructive notice. The testimony of Borel is altogether negative; he inquired for letters on the 1st of December and there was none; but it does not appear, that he or any body else had inquired on the preceding days, from the 26th November, up to the 1st of December. This does not prove that the letter was not in the office. It may have been overlooked by the attendants, or not having been called for during the month of November, it may have been placed with letters to be advertised.

The defendant's counsel relies on the authority of *Bayley on Bills*, to show that when it is not known where a party lives, due diligence must in general be used, to find him out, and inquiry should be made of some of the other parties of the bill. *Bayley on Bills*, 180, 181.

It is shown in this case, that inquiry was made at the domicil of two other parties to this note, for the residence of the defendant, without effect. According to that authority, the diligence used was such as is considered sufficient by the commercial law. We are of opinion, that this statute has not introduced a new rule on this subject, but merely a new mode of proof of such diligence. We cannot assent to the proposition of the defendant's counsel, that the third section of the act referred to, does not apply to such parties as reside at the same place. The statute makes no exception, and indeed no such exception could have been contemplated, because the whole section rests on the hypothesis, that the residence of the party is unknown, and then the notice is directed to be given at the place where his obligation was contracted or rather where the bill was drawn. This note was drawn in New-Orleans, and that is presumed to be the residence of the parties.

*The statute passed by the legislature does not change the usage or rule of the commercial law in relation to the diligence to be used in serving notices of protest, but merely provides a new mode of proof of such diligence.*

When the statute speaks of due diligence, without defining in what that shall consist, it refers necessarily to the existing rule, according to commercial law or usage.

" The holder of a bill of exchange," says Chitty, " is excused for not giving regular notice of its being dishonored to an endorser, of whose place of residence he is ignorant, if he

*When the statute speaks of due diligence without defining in what it shall consist, it refers necessarily to the existing rule according to commercial law or usage.*

EASTERN DIST.
June, 1834.

PRESTON
vs.
DAYSSON ET ALS.

If the holder of a bill uses reasonable diligence to discover the residence of the endorser, notice given as soon as this is discovered, is due notice of the dishonor of the bill within the usage and custom of merchants.

The holder of a bill or note ought not to avail himself of the ignorance of the notary as to the residence of the endorsers.

use reasonable diligence to discover where the endorsers may be found;" and Lord Ellenborough observed, " when the holder of a bill of exchange does not know where the endorser is to be found, it would be very hard if he lost his remedy, by not communicating immediate notice of the dishonor of the bill, and I think the law lays down no such rigid rule. The holder must not allow himself to remain in a state of passive and contented ignorance, but if he uses reasonable diligence to discover the residence of the endorser, I conceive that notice given as soon as this is discovered, is due notice of the dishonor of the bill, within the usage and custom of merchants." *Chitty on Bills*, 276.

According to our view of the law, and the evidence in the case, the endorser is not released from her liability. It is true, the holder of the paper ought not *to avail himself of the* ignorance of the notary, as to the residence of the endorsers, but there is no evidence to show that the holder knew where she resided.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed, and that the plaintiff recover of the defendant, three hundred and thirty dollars and ninety-four cents, with interest at five per cent., from the 26th of November, 1833, and costs in both courts.