Mobphy, J.
delivei-ed the opinion of the court.
This is an appeal from a judgment against the payee and indorser of a note drawn by one Cornelius J. Phillips, at New Oarthage, in tbe parish of Madison, and made payable at tbe Bank of Orleans, in this city.
The appellant urges that tbe court erred in overruling bis plea in abatement on account of tbe pendency of a suit against him for tbe same cause of action in tbe United States circuit court at Jackson, in the State of Mississippi. The question presented by this plea can hardly he considered as open in this court. Stone v. Vincent, 6 Mart. N. S. 517 ; Godfrey v. Hall, 4 La. Rep. 158 ; West’s syndics v. McConnell, 5 Id. 424. But it is said that when these decisions were made, the attention of the court was not called, nor was any reference made to arts. 99 and 335, of the Code of Practice, which are considered as decisive by appellant’s counsel. As these decisions are all posterior to the promulgation of the Oode of Practice, it is reasonable to pre *291 sume that the provisions of law to which we are referred would not have been passed sub silen.tio, had they been thought to have such a direct bearing upon this point. This court no doubt was then of opinion, as we are now, that the Code of Practice contemplates only suits brought before two tribunals of concurrent jurisdiction within our own State, hut does not deprive the courts of this State of their jurisdiction in a cause brought before them, because a suit may have been commenced in another State or country between the same parties, and for the same cause of action. The rule in the English courts is that the pendency of a suit in a foreign country by the same plaintiff against the same defendant, for the same cause of action, is no stay or bar to a suit instituted in one of their courts. This rule has been [481] followed in this and other States we believe, as to suits instituted in the courts of our sister States; although the States of this Union are not to he viewed in the light of foreign countries by each other, yet they are independent sovereignties, and distribute justice within their limits according to their own laws and regulations, and without regard to judicial proceedings had elsewhere in a suit between the same parties, unless they have not been followed by a definitive judgment on the merits. Our courts have no greater connection or interference with the court of the United States for the ninth circuit and district of Mississippi, than they have with any of the other State courts. The same rule should therefore govern, and jurisdiction was, we thinls, properly retained in this case. Bowne & Seymour v. Joy, 9 Johnson’s Rep. 221.
Our attention has been drawn to a bill of exceptions to the opinion of the judge below, sustaining an objection to the question whether plaintiffs were the owners of the note in suit. The testimony was rightly excluded. It is now too well settled to be again questioned that on a simple allegation that the plaintiff is not the owner of the instrument sued on, such inquiries cannot be gone into. The defendant must aver (which he has not done here) that he has a good defence against the real owner, otherwise, whether the plaintiff is the owner or not, is a fact which cannot avail him. Banks v. Eastin, 3 Martin, N. S. 291 ; Shaw et al. v. Thompson, Id. 392 ; Abot v. Wiltz, 14 L. 448.
The point most strenuously insisted upon is the want of proper notice to defendant; it appears from the evidence that the notary, not knowing, and not being able to ascertain defendant’s domicil, put a notice of protest in the post-office of this city, on the evening of the 4th of May, 1837, the day he protested; this letter was directed to Mew Carthage, the place where the note was drawn; independent of this, he delivered another notice for defendant to the plaintiffs ; the latter understanding that defendant lived [482] somewhere in Mississippi, sent it on the following day to Sami. T. McAlister, their correspondent at Matchez, with a request to direct it to defendant. McAlister testifies positively that he received this notice on the 7th of May, and on the same day forwarded it through the Matchez post-office to Warren-ton, in Mississippi, the nearest post-office to defendant’s domicil in that State, and that to which Ms letters are usually directed; he does not state whether he received the notice by the mail or by a steamboat, but the evidence *292 renders it very probable that it was in the latter way. The notice was received by defendant, and he has himself given it in evidence for the purpose of showing that it bears the stamp of the Natchez post-office of the 12th May; from the discrepancy in the dates between the testimony of McAlister and the post-mark, the appellants’ counsel contends that through the neglect of the agent of plaintiffs in Natchez, the notice was mailed only on the 11th of May, and did not reach defendant as soon as it would have done, had it been put in the post-office of New Orleans. Samuel T. McAlister’s testimony is corroborated by that of his clerk and brother "William McAlister, who is equally positive that the notice to defendant was received in Natchez on the 7th of May, and forwarded to him at "Warrenton on the same day; and also by a letter to plaintiffs, written by himself, on the 12th May, giving them an account of what he had done on the 7th, in relation to the notices sent to him. As to the manner in which the post-office at Natchez was managed, the testimony is very contradictory, some witnesses attesting the regularity with which the business in the office was conducted, while others speak of the notorious confusion and carelessness prevailing in it, on account of the postmaster and his chief clerk being engaged in pursuits incompatible with a proper and regular discharge of their duties; and they mention instances of letters addressed to persons at a distance having been swept out of the office, and found before the [483] door. Upon the whole, we incline, with the judge below, to ascribe the discrepancy in the evidence to a careless detention of the notice in the post-office, rather than to discredit the otherwise unimpeached testimony of the two McAlisters, corroborated as it is by the letter written to plaintiffs a few days after the occurrence. If any delay has resulted from the course pursued under the circumstances of this case, we are not prepared to say that it should injure plaintiffs’ right to recover. Bayley on Bills, p. 270, 280, and 287. But should there be any doubt as to the notice being in time, by reason of plaintiffs’ sending it by a steamboat, and not by mail from New Orleans, we think that they are entitled to the benefit of the constructive notice created for cases of this kind by the 8d section of the statute of 1827 (1 Moreau’s Digest, 99). "Were a compliance with the requirements of this law attempted to be shown only by the official certificate of the notary who made the protest, it could not have availed plaintiffs. The evidence discloses that the most material circumstances which should have been mentioned in the entry on Ms books, to be attested by him in the presence of two witnesses, had been omitted therein at the time of the protest, but that several months after having discovered these omissions, the notary made an interlineation in the original record, inserting the circumstances which his clerk had left out; this, he says, was done by him because he had a distinct recollection of those circumstances, and thought it his duty to conform the entry to the true state of the fact. We cannot countenance such an act. It destroys, in our opinion, the authenticity of the deed, and consequently its admissibility as evidence, under the statute. It would be dangerous indeed to permit a notary, even with the best intentions, to supply any omissions in a deed passed before him ; when it is completed, he has no right whatever to amend or change it. The statute which requires that the official certificate of the notary shall be received as proof of the facts *293 mentioned in it, cannot be too strictly construed, for it introduces a new mode of proof at war with the ordinary rules of evidence. But this [484] court has repeatedly decided that the written proof provided for by this statute does not exclude parol evidence of the notice of protest. 7 La. Rep. 7; 8 Id. 170 ; 11 Id. 566. The notary was examined as a witness. He states distinctly and positively that he demanded payment of the note at the Bank of Orleans; and that after fruitless inquiries at the counting-house of the holders about the defendant’s residence, he made out two notices for defendant, one of which he put in the post-office of this city, addressed to New Carthage, and the other he handed over to the plaintiffs; the clerk of the latter testifies also as to the inquiries made in relation to defendant’s domicil. This shows, in our opinion, a sufficient degree of diligence, and authorized the putting of the notice into the post-office, addressed to defendant, at the place where the note purported to have been drawn. 1 Moreau’s Digest, p. 09, sect. 3; Bayley on Bills, 280; Preston v. Daysson, 7 La. Rep. 7. It might not he unnecessary to add that the testimony shows that there is a post-office at New Carthage, almost within sight of defendant’s' residence, being only at a distance of about three miles from it, while the nearest post-office on the Mississippi side is about fifteen miles from defendant’s house.
It is therefore ordered, that the judgment of the commercial court be affirmed, with costs.